(85 South. 701)

## JOHNSON v. RIDDLE & ELLIS et al.
### (2 Div. 704.)

(Supreme Court of Alabama. April 22, 1920.
Rehearing Denied June 30, 1920.)

**I. Appeal and error ⚖️515(2)—Statute providing that judge "may" require testimony to be shown in transcript construed to require court to so do.**

Testimony taken orally in open court in equity cases under Acts 1915, p. 705, should be shown in transcript on appeal, since such statute, providing that the judge or chancellor "may" require such testimony to be transcribed in typewriting, certified by the stenographer and filed in the cause, will be construed as providing that judge or chancellor "must" require testimony to be so transcribed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, May.]

**2. Attorney and client ⚖️182(1) — Attorney cannot intervene in foreclosure to enforce lien for services rendered in ejectment.**

Where client repudiated settlement agreement entered into in action in ejectment, and employed other attorney to foreclose mortgage on same land as that involved in ejectment action, the attorney who represented her in ejectment action could not, in absence of allegation of fraud, intervene in foreclosure action and enforce lien for services rendered in action in ejectment, though the money paid into registry in foreclosure action was in part the same money that would have been paid to perform settlement agreement in the ejectment action.

**3. Attorney and client ⚖️182(1)—Nature of attorney's lien stated.**

An attorney's lien exists and is enforceable only against moneys or personal property acquired by services rendered in a particular action or proceeding by which the money or property is produced, and is limited to the price or value of the services rendered in producing the money or property.

Appeal from Circuit Court, Bibb County; B. M. Miller, Judge.

Intervention by Riddle & Ellis and others to fix a lien for attorney fees upon a fund paid into court in settlement of a pending action. From the decree declaring a lien, Mollie Johnson, one of the parties to the suit, appeals. Reversed and rendered.

Pinckney Scott, of Bessemer, for appellant.

Counsel discusses the demurrers filed, but without citation of authority. He insists that the question of nonclaim was properly presented. Sections 2590, 2593, Code 1907; 80 Ala. 173; 78 Ala. 130. Counsel discusses other assignments of error, but without further citation of authority.

S. D. & C. D. Logan, of Centerville, and J. J. Mayfield, of Montgomery, for appellees.

An attorney is entitled to his reasonable compensation. 98 Ala. 461, 13 South. 368. He has authority to bind his client, in the absence of fraud or mistake. 170 Ala. 341, 54 South. 499. An attorney has a lien, which he may enforce. Section 3011, Code 1907; 183 Ala. 192, 62 South. 500; 158 Ala. 295, 48 South. 371; 72 Ala. 480; 102 Ala. 604, 15 South. 141.

SAYRE, J. Appellees filed an intervention, seeking to enforce an alleged lien upon a fund in the registry of the court for services rendered by them in an action of ejectment. As will appear more specifically later on we have not before us all the evidence upon which the circuit judge, sitting in equity, proceeded to a decree. We assume, therefore, in agreement with what must have been the finding in the trial court, that there was no express contract in reference to a fee for prosecuting the ejectment, and that a prior contract between the parties for legal services in and about the foreclosure of a mortgage on the land sued for in the ejectment—that being the remedy first resorted to—did not provide for the contingency of an action in ejectment. After a foreclosure sale under the power in the so-called mortgage, at which appellant's intestate became the purchaser, appellees brought the action of ejectment; but it was evident that the mortgage, so called, conferred no title, and that there could be no recovery of the land. Thereupon the attorneys entered into a tentative agreement of compromise by the terms of which, according to appellees' version as shown in the evidence, defendant McElroy was to pay appellant the sum of $515—about half of the debt which the mortgage purported to secure—and the suit was to be dismissed, each party assuming to pay one-half of the costs. And it appears that an order to that effect was made. But appellant's intestate repudiated the agreement, and employed other counsel to sue for relief as he might be advised. Counsel thus employed thereupon filed a bill in equity to foreclose the mortgage, or, in the alternative, to have a lien declared in favor of this appellant. Then complainant in that cause, appellant's intestate, died, and appellant took his place. That cause was then settled by compromise, and McElroy paid into court the sum of $725 in satisfaction of appellant's demand, after which appellees intervened by petition, seeking to enforce an alleged lien against the fund for the amount of the value of the services rendered by them in bringing the action of ejectment, averring that, in prosecuting that action, plaintiff's reliance was upon the title conferred by the mortgage and foreclosure; that appellant's intestate had authorized the compromise of the mort-

---

gage debt—for the sum of $550, the petition alleged—and the settlement and dismissal of the ejectment suit; and relief was decreed in accordance with the prayer of the petition of intervention.

In the petition of intervention there was no averment that the action of appellant's intestate in repudiating the agreement for $515 in compromise of the ejectment suit and in retaining another attorney to file the bill in equity was the result of a fraudulent scheme to maneuver appellees out of their alleged lien. And, notwithstanding the incompleteness of the record, we might say with much assurance that there was no proof of any such fraudulent purpose. Letters written to intestate by that member of the appellee firm who managed the business with intestate and negotiated the tentative agreement of compromise—said letters being noted in the note of testimony and appearing in the record without denial—show that intestate had been informed by appellees that his suit would be settled for the sum of $550, as alleged in the petition of intervention, whereas the settlement which intestate repudiated was for $515. Moreover, as noted above, the mortgage under which intestate claimed was wholly void, confessedly, and the attorney of latest importation into the case proceeded upon a theory wholly different from that on which appellees had filed their action of ejectment, and the bill filed by the latest attorney produced by way of compromise a sum considerably in excess of the amount for which appellees had stipulated in their tentative agreement.

[1] The record shows that appellees submitted in the trial court on the "oral evidence of S. D. Logan and J. T. Fuller taken in open court," inter alia, and on the absence of the testimony of these witnesses from the record it is argued that the decree must be affirmed at all events. Mr. Logan was associated with appellees as local counsel at Centerville, but, as heretofore indicated, negotiations between appellee firm and appellant's intestate were conducted by the member (at Columbiana) to whose letters we have referred. Mr. Fuller was counsel for McElroy. It can hardly be supposed that these witnesses contradicted the letters. Their testimony, it may be noted, was taken by virtue of the act of September 22, 1915 (Acts, p. 705), and otherwise it could not have been taken ore tenus, as it was. The act did not intend to deny an opportunity for review in this court; on the contrary, to the end that there might be a review, the provision is that the chancellor or judge trying the case must require the court reporter, or some other competent stenographer, to take down the testimony as delivered, and such judge or chancellor may—meaning "must," since the act authorized is for the advancement

of justice (Endlich, Interp. Stats. § 306)—require such testimony to be transcribed in typewriting, certified by the stenographer, and filed in the cause. We have recently decided that the testimony so certified must be noted in the note of testimony. Lunday v. Jones, 85 South. 411.[1] All which means, of course, that testimony so taken should be shown in the transcript on appeal. In this case, however, the register has omitted the testimony, nor has any effort been made to have the omission corrected.

[2, 3] However, the decree cannot be affirmed on the ground last mentioned, for, notwithstanding the difficulty presented by the incompleteness of the record, it is indisputably true that there was no averment of fraud, and, aside from that even, it is entirely clear that appellees claimed a lien for services rendered in the bringing of an action of ejectment, and sought to fasten a lien on the proceeds of a suit filed by another attorney to enforce a lien. The fact that the same land was involved will not suffice for appellees' purposes. An attorney's lien exists and is enforceable only against moneys or personal property acquired by services rendered in the particular action or proceeding by which the money or property is produced, and is limited to the price or value of services rendered in producing the money or property. A mere general debt due to the attorney is not the foundation of the lien. Hale v. Tyson, 202 Ala. 107, 79 South. 499; Jackson v. Clopton, 66 Ala. 29; Mosely v. Norman, 74 Ala. 422. Nor would it avail appellees anything should we assume as the brief for appellees suggests, that the oral evidence heard by the chancellor went to show that the money paid into the registry of the court in the equity cause was in part the same money McElroy had on hand when he was ready to perform the agreement of settlement in the ejectment suit. Whatever may have been the merit of McElroy's refusal to execute the alleged agreement, it is certain on the record in this cause that he did not execute it, and that the money he then had remained his money until the moment of its deposit with the register in the equity cause, and as long as it remained his money it was not subject to any lien in favor of the attorneys for his adversary. Appellees had a lien on the "suit," but that came to naught.

The decree declaring a lien in favor of appellees was error. A decree will be here rendered, dismissing the petition of intervention.

Reversed and rendered.

ANDERSON, C. J., and GARDNER and BROWN, JJ., concur.

---

[1] Ante, p. 326.