177 So. 347

**LYNCH v. JACKSON et al.**

**4 Div. 988.**

Supreme Court of Alabama.

Nov. 11, 1937.

Rehearing Denied Dec. 16, 1937.

O. S. Lewis and Emmet S. Thigpen, both of Dothan, for appellant.

Martin & Jackson and Tompkins & Ramsey, all of Dothan, for appellees.

THOMAS, Justice.

The bill sought partition of real property among cotenants by its sale.

A material part of the testimony was taken orally before the circuit court and judge rendering the final decree. It is supported by the intendments that prevail. Hodge v. Joy, 207 Ala. 198, 92 So. 171.

The respective insistences are that the possession of the land by Mrs. Lynch, formerly Mrs. Espy, was in recognition of complainants' right, title, and interest therein; the contrary insistence being made that the long holding by Mrs. Espy was not merely permissive, but was open, notorious, and adverse to the interests of complainants and the other persons so interested. It is well stated by the trial judge that the character of the possession of Mrs. Lynch was the turning point in this decision. Did Mrs. Espy hold and enjoy the usufruct from the land as adverse holder or under her quarantine rights as widow?

It is recited in the decree as follows: "Miss Gray Espy, one of the complainants in this cause, testified, in substance, that she went to the home of respondent, Mrs. M. A. Lynch, not long after the death of Thomas F. Espy, and told her, Mrs. M. A. Lynch, she could not sell the lands involved in this suit and that Mrs. Lynch said she knew she could not sell it and that she was not trying to sell it. It is true that Mrs. Lynch, in her rebuttal testimony,

denied that such statements were made by Miss Gray Espy and herself. Did this conversation take place? If so, the Court is of the opinion that the possession of Mrs. Lynch was permissive. If this conversation did not take place, then the Court might be of the opinion that her possession was adverse. If the conversation did not take place, why the anomalous situation in this case, with reference to the deed that Mrs. Lynch claims that Thomas F. Espy executed and delivered to her in the year 1909 prior to his death? If this conversation did not take place, why did Mrs. Lynch not take the necessary steps, after the death of Mr. Espy, to have her dower interest in the lands involved in this suit set apart to her? If this conversation did not take place, why did Mrs. Lynch not take steps to have this land or a portion of it set aside to her in lieu of a homestead? These are matters which, in the judgment of the Court, corroborate the testimony of Miss Espy with reference to her conversation with Mrs. Lynch and impels the Court to the conclusion that the possession of Mrs. Lynch, during all these years, of the lands involved in this suit was permissive, so far as the complainants in this case are concerned, and that Mrs. Lynch so understood her possession of these lands during the entire period of time covered by her possession. * * *"

From the decree ordering the lands sold, only Mrs. M. A. Lynch appeals; and the two respondents, Mrs. Fannie Escott and Frank C. Espy, took no appeal.

It is admitted that the decree is in error as to the respective interests of the joint tenants, and this court is asked to correct the decree in this respect.

In Yarbrough v. Yarbrough, 200 Ala. 184, 75 So. 932, the authorities are collected to the effect that where the widow retains the use of the land of a deceased husband, she may so hold until dower is assigned without having to account for rents, income, and profits therefrom. In such case there is placed upon the owner of the fee the burden of having dower assigned. It is further declared that failure to have dower assigned, and permitting the widow to retain possession without more, does not deprive the owner of the fee in the land.

Appellant relies on Miller v. Vizzard Inv. Co., 195 Ala. 467, 70 So. 639, and other authorities now to be considered. In the Miller v. Vizzard Inv. Co. Case, supra, there was a lack of evidence that the possession held was permissive. Here there was evidence that Miss Espy personally notified the widow, Mrs. Lynch, that her use of the land was merely permissive. We think, as did the trial court, as we have indicated, that such fact and notice was corroborated. It is true that the trial judge did not hear Miss Espy give her evidence on this question, yet he did hear the testimony of Mrs. Lynch, who denied the testimony of Miss Espy as to showing that notice was given.

It is sufficient to note that the case of Shotts v. Carpenter et al., 232 Ala. 487, 168 So. 884, was not that of a tenant in common; and in Arendale et al. v. Washington et al., 213 Ala. 23, 104 So. 133, knowledge of adverse holding was brought home to the other cotenants. In Winsett v. Winsett, 203 Ala. 373, 83 So. 117, and in Palmer v. Sims et al., 176 Ala. 59, 57 So. 704, no such notice was chargeable to the cotenants, who challenged the adverse holding of cotenant in possession.

In Black et al. v. Black et al., 233 Ala. 425, 172 So. 275, it is observed: "But, in August, 1910, and after the death of her other sisters, Bethenia executed a warranty deed purporting to convey to Wash Black the entire title to the land in controversy for a recited consideration of $500 which deed was duly recorded in November following. Whether Litel Black, the father of Wash, was then living the record does not indicate. If so, then Wash Black was a stranger to the title, and his possession thereunder would constitute an ouster of the cotenants under the authority of Dew v. Garner, 207 Ala. 353, 92 So. 647, 27 A.L.R. 5, and Short v. De Bardeleben Coal Co., 208 Ala. 356, 94 So. 285." That is to say, in the last-cited case Black was a stranger to the title. Here Mrs. Lynch was a cotenant. In the Black Case there was no evidence of a permissive use, as was the tendency of evidence in the case at bar. In the Black Case the insistence was adverse possession and prescription under a deed regularly executed and recorded. Here Mrs. Lynch offered no such evidence of title or color of title. Lyons v. Taylor, 231 Ala. 600, 166 So. 15.

The foregoing will illustrate the recent holdings of this court that have application or nonapplication to the facts, as we have indicated. When the entire record is carefully examined, we find that complainants'

Iապ

contention that Mrs. Lynch was permitted to remain in possession of the land and to use the proceeds therefrom in support and maintenance of herself as the widow and the infant children (Fannie Espy Escott, Franklin C. Espy, and Mary Elizabeth Espy) of Thomas F. Espy, deceased, from 1910 to the bringing of this suit, is corroborated by the preponderance of the evidence.

We are of the opinion and hold that Miss Espy notified Mrs. Espy a few years after the death of Mr. Espy, and before her marriage to Lynch, that she could not sell the land, and Mrs. Espy admitted she did not have the right of sale thereof. This testimony touching that widow's permissive use of the land for herself and children is corroborated by J. T. Jackson, John Spivey, John Gilmore, and Mrs. G. E. Jackson.

Mrs. Lynch denies a joint ownership or tenancy in common in the land in her pleading. She admits that:

" * * * She is the widow of Thomas F. Espy, deceased, and as such claims the land described in said paragraph three. She admits Thomas F. Espy died in the year 1910, leaving surviving him this respondent whose name was then Margaret A. Espy, now Mrs. M. A. Lynch, and three minor children, as described in said paragraph. She admits that Mary Espy died unmarried and without issue, about 1910 or 1911. She admits that Thomas F. Espy left surviving him the following adult children:

"Thomas F. Espy, William W. Espy, J. R. Espy, J. J. Espy, Mrs. G. E. Jackson, and Miss E. G. Espy, and that William W. Espy, died unmarried without issue, about 1912 or 1913. She admits J. R. Espy died about 1925, leaving a will, copy of which is exhibit 'A' to the bill; that Thomas F. Espy died about August 12th, 1933, leaving surviving him the widow and children named in said paragraph, and leaving a will, a copy of which is attached and marked exhibit 'B' to the bill.

"She denies that at the time of the death of Thomas F. Espy, this respondent had a separate estate, which exclusive of the rents, income and profits was equal to or greater in value than her dower interest and distributive share in her husband's estate as in said paragraph alleged. She denies that she occupied said land by permission of complainants or any one else. She admits she has been in possession of said land, renting the same out and enjoying the profits and income thereof, and that none of the complainants have ever received any of the income from the said land."

Said respondent relies in her answer for title solely upon the theories of adverse possession for ten years and the period of twenty years, by prescription.

In the cross-examination of Mrs. Lynch, she denies that Thomas F. Espy owned the land when he died, asserting her claim thereto by deed from her husband to her dated November 7, 1909. The deed was not offered in evidence, although Mrs. Lynch had what she said was that paper, and exhibited the same to counsel in court. Thus her allegation and proof did not correspond, and her respective claims were in conflict. The evidence of this deed will not be considered in the decision of this case under the maxim of proof without allegation, which is as important as allegation without proof. Southern Surety Company v. Mobile Nat. Bank, 223 Ala. 463, 137 So. 297, and Tatum v. Commercial Bank & Trust Company, 193 Ala. 120, 69 So. 508, L.R.A.1916C, 769.

Counsel indicate, and (as far as we are now advised) correctly so, that the decree should be corrected so as to adjudge the property involved in the suit to be jointly owned by the persons stated, and in the following proportions.

| | |
|---|---|
| Mrs. G. E. Jackson | 51/378 |
| Miss E. G. Espy | 51/378 |
| Fannie Espy (Escott) | 51/378 |
| Franklin C. Espy | 51/378 |
| M. W. Espy (subject | 17/378 |
| J. J. Espey, Jr. to dower | 17/378 |
| Sarah Frances Signey rights) | 17/378 |
| Emma C. Espy, Dower in 51/378 | |
| Mrs. Bessie Espy | 17/378 |
| William G. Espy | 17/378 |
| Frances Espy | 17/378 |
| Elizabeth Espy | 17/378 |
| Robert Espy | 17/378 |
| Collier Espy | 17/378 |
| Mrs. M. A. Lynch | 21/378 |
| | |
| Total | 378/378 |

The foregoing result follows from the holding that appellant's use of lands was permissive, was as a cotenant with complainants and the joint owner, and never brought home to them any knowledge that she claimed the subject lands as her own, and said lands were not held and used in a quarantine right. That is to say, ap-

pellant was the widow, and, as such, took, held, and used the land, and that she did not take title by adverse possession or by prescription against her infant children, who are heirs at law of Mr. Espy, and against the heirs of the deceased husband by a former marriage.

It is thus apparent that the final decree was in error in that the joint interest of Mrs. Lynch by reason of the statute of descent and distribution, and that providing an interest in dower for the widow, if she is so entitled to claim dower, was not taken into consideration in the decree. Section 7450, Code 1923; Williams v. Anthony, 219 Ala. 98, 121 So. 89. It was the duty of the owner of the ultimate estate to have dower assigned, and this was not done. The final decree will take account of the whole estate and the respective interests of cotenants or joint owners and the widow's dower, if she is so dowerable. However, appellant's counsel in brief say there is no question of dower or homestead in the lands involved.

The judgment of the circuit court is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.