178 So. 48

**BROMBERG et al. v. FIRST NAT. BANK OF MOBILE et al.**

1 Div. 975.

Supreme Court of Alabama.

Dec. 16, 1937.

Rehearing Denied Jan. 20, 1938.

Harry T. Smith & Caffey, of Mobile, for appellants.

McMillan & Aldridge, Outlaw & Seale, and Smith & Johnston, all of Mobile, for appellees.

THOMAS, Justice.

The pleading of First National Bank was interpleader. Adverse interest was supported and all parties were duly represented.

The case was tried upon amended pleadings, was so decided by the circuit court of Mobile county, Ala., in equity, and will be likewise considered here. Thomas, Supt. of Banks, et al. v. Barnes et al., 219 Ala. 652, 123 So. 18, and Federal Automobile Insurance Ass'n et al. v. Meyers, 218 Ala. 520, 119 So. 230.

The pleading of the First National Bank, as the personal representative of the estate of Frederick G. Bromberg, sought directions as to the disposition of the moneys and properties of said estate.

Pertinent parts of the final decree, on the several pleadings and evidence, were as follows: (1) That the heirs of said decedent Bromberg are not entitled to the funds or properties held by the bank and the same constitute no part of decedent's estate; (2) that the acts, declarations, and correspondence of Mr. Bromberg created an express trust in the special funds and moneys deposited with proponent; (3) that prior to his death the said Frederick G. Bromberg distributed a portion of the trust funds held by him in trust for the use and benefit of heirs, distributees, and personal representatives, among some of the heirs; (4) that a reference should be held to ascertain the costs, fees, expenses, and allowances in connection with this proceeding, and the names and respective interests in said trust funds of the heirs, distributees, and personal representatives of said John Bowen; and (5) that the balance of such trust funds remaining after paying the costs, expenses, fees, and allowances in connection with this proceeding should be distributed among the heirs, distributees, and personal representatives of the said John Bowen, as their respective interests may appear.

The excerpts to be made of Mr. Bromberg's reports and testimony will give the antecedent history of this controversy. We forego a detailed statement thereof at this juncture other than to say that Mr. Bromberg stated the balance of the instant accounts and trust, and such acts and declarations being against his personal interest and made in due course are accepted by appellee's counsel and by the trial court as the true and just amount to be distributed. Code 1923, § 7672; Hodge v. Joy, 207 Ala. 198, 92 So. 171; Indemnity Ins. Co. of North America v. Holiway, 233 Ala. 100, 101, 170 So. 329. And we may observe, not only did the acts and declarations of Mr. Bromberg show the trust and for whom it was maintained, but the testimony of his employees was also to like effect. This confirmed the stated amounts of $23,844.43, less commissions of $3,470.41, leaving $20,374.62 for distribution. A reference to the balance shown in the First National Bank on November 20, 1928, of $23,844.42, will show a correspondence of amounts that is significant and in accord with Bromberg's statement of the amount of the account, and that the amount on hand for distribution was $23,844.43. That is to say, when Bromberg's commissions of $3,470.41 are deducted from the sum indicated above, it is in accord with the amount on hand for distribution, to wit, $20,374.02. This appears to be conclusive of the balance of the trust fund for distribution.

We now come to a consideration of the parties before the court who are entitled

to a distribution of this fund. This is a necessary response to the pleading of the First National Bank.

The second paragraph of the answer of the Bowen heirs reads:

"These respondents allege that the money in the hands of complainant is proceeds of property at one time belonging to the firm of Bowen & Murdock, a partnership as alleged in the bill, and that the proceeds should be paid to said heirs and personal representatives after paying the costs and legal charges and advancements made in the operations of the properties of said firm, but these respondents say that John Bowen, one of the original partners advanced for the operation of said business large sums of money in excess of the amount now in the hands of the complainant, which advancements were a valid charge against said properties and against the partnership and should be repaid to him or to his heirs and personal representatives before distribution of any balance that might be due the heirs and representatives of the said partners as such."

In the second paragraph of their answer (above set out), the Bowen heirs deny that Bromberg had legal title to the money; in the seventh paragraph they allege that the moneys are a trust fund; and in the fourth, fifth, and sixth paragraphs, set out the history and claim of the moneys, the subject of the deposits, constituting the corpus of the trust estate before the court.

When the whole pleading is considered, it was broad enough to present the issues of fact covered by the evidence, on which the decree is rested. Equity will consider the full answer that justice be done in the premises, notwithstanding confusion or conflict contained in answers. Lynch v. Jackson, Ala.Sup., 177 So. 347 [1]; Southern Surety Co. v. Mobile Nat. Bank, 223 Ala. 463, 137 So. 297, and Tatum v. Commercial Bank & Trust Co., 193 Ala. 120, 69 So. 508, L.R.A.1916C, 767.

The facts averred and the evidence show that Bromberg by his conduct and declarations constituted himself a trustee of the fund in question and his heirs and personal representatives are bound thereby. Hodge v. Joy, supra.

Every case must stand upon and be governed by its facts. There is no iron-clad rule. The positions taken in court and acts of estoppel, Ivy v. Hood, 202 Ala. 121, 79 So. 587, are binding upon parties, and upon privies in estate, and by blood, Clark et al. v. Whitfield et al., 213 Ala. 441, 105 So. 200.

Mr. Bromberg in the former cause dealing with these moneys treated himself as a trustee. He and his privies in estate are bound by this position taken in the former proceeding.

"It is a familiar statement of the law of estoppel that 'a party who has, with knowledge of the facts, assumed a particular position in judicial proceedings, is estopped to assume a position inconsistent therewith, to the prejudice of the adverse party.' 16 Cyc. 796; Taylor et al. v. Crook, Adm'r, 136 Ala. [354], 356, 378, 34 So. 905, 96 Am.St.Rep. 26; Eldridge v. Grice, 132 Ala. 667, 668, 32 So. 683; Schamagel v. Whitehurst, 103 Ala. 260, 263, 15 So. 611; Hodges v. Winston, 95 Ala. 514, 517, 11 So. 200, 36 Am.St.Rep. 241; Hill's Adm'r v. Huckabee's Adm'r, 70 Ala. [183], 184, 188; Boyett v. Standard C. & O. Co., 146 Ala. 554, 557, 41 So. 756; Ohio & M. Railway Co. v. McCarthy, 96 U.S. [258], 267, 24 L.Ed. 693." Brown v. French, 159 Ala. 645, 648, 49 So. 255; Mobile Towing & Wrecking Co. v. Hartwell, 208 Ala. 420, 95 So. 191.

"A defendant who, for the purpose of maintaining a defense, has deliberately represented a thing in one aspect, cannot be permitted to contradict his own representation by giving the same thing another aspect," at law or in equity. Hodges v. Winston, 95 Ala. 514, 517, 11 So. 200, 201, 36 Am.St.Rep. 241; Luling v. Sheppard, 112 Ala. 588, 593, 21 So. 352.

" 'A party who obtains or defeats a judgment, by pleading or representing a thing or judgment in one aspect, is estopped from giving it another in a suit founded upon the same subject-matter.' " Herman on Estoppel, § 165; Todd v. Interstate Mortgage & Bond Co., 196 Ala. 169, 174, 71 So. 661; Huntsville Belt Line & Monte Sano Railway Co. v. Corpening & Co., 97 Ala. 681, 684, 12 So. 295.

"When a party has defeated a judicial proceeding by alleging by pleading a particular state of facts, he can not be heard subsequently to deny or disprove these facts in defense of another proceeding." Taylor v. Crook, Adm'r, 136 Ala. 354, 356, 34 So. 905, 96 Am.St.Rep. 26; Luling

---

[1] Ante, p. 90.

v. Sheppard, supra; Mobile Towing & Wrecking Co. v. Hartwell, 208 Ala. 430, 95 So. 191; note, 34 L.R.A.,N.S., page 316; Estes Lumber Co. v. Investors' Syndicate, 223 Ala. 408, 137 So. 31; Alexander v. Mobile Auto Co., 200 Ala. 586, 76 So. 944; Robb v. Vos, 155 U.S. 13, 15 S.Ct. 4, 39 L.Ed. 52; Smith v. Boston Elevated Railway Company, 1 Cir., 184 F. 387, 37 L.R.A.,N.S., 429; note, 5 A.L.R. 1506."

Under the foregoing authorities, the excerpt to be made of Mr. Bromberg's evidence speaks for him. Said evidence was taken in the case of Frederick G. Bromberg et al. v. J. Bowen Wilson, in Mobile chancery court, case No. 5079. We quote from "Report of Frederick G. Bromberg, as Manager of Bowen & Murdock," which was made in the Mobile chancery court in case No. 5079. Among other things, the report states:

"My visits to the mines in Mexico enabled me to be in a position to advise in the making up of these leases as stated in my report.

"Mr. Torrey came here from Boston, Mr. Charles E. Torrey came from Mexico, and Mr. Charles Guggenheim came from New York. All the negotiations and all the preliminary writings were had in my office or in the hotel and all writings provided by myself represented not only Mr. Torrey, but also Mr. Cox and Mrs. Cox, and these I could not have done had I not been, as I was, twice there, and understood the conditions. * * *

"The third contract with Guggenheim's Sons will expire on the first day of August, 1903, at which time the mines will have reverted again to the care and custody of Bowen and Murdock, and Bowen and Murdock will be responsible for the expenses of watchmen to guard the property, and for the taxes, municipal and State, that the Mexican law imposes on mining property, and the payment of which is a condition of the continued operation of ownership over the mine. Mines in Mexico must either be operated or the taxes paid, and if the taxes are not paid or the mine not operated, the 'denouncement' as it is called, follows. There is no such thing as the ownership of mines in fee simple in Mexico, one owns only the right to work, the State never parts with the ownership of the land itself.

"This problem now presents itself to the Manager, but, as stated in my report, I think that I have succeeded in making

a new lease with Mr. Herman Brendel of Musquiz, State of Coahuila, Mexico, who is now operating under a sub-lease under Guggenheim's Sons, commencing the first day of August, 1903, that will be for a term of five years, and will be under the same terms and conditions as to royalties. The papers are not yet executed, but have been sent on to Mexico for execution."

On examination by the register, in that cause, Mr. Bromberg, among other things, testified:

"I have on hand a sum of money which my report shows.

"I think I am entitled, like any other Trustee, to 5% at least for handling this money. The other compensation asked is simply as a lawyer, for drafting the pleadings. But I have been acting as a banker, I have been receiving this money and partially disbursing it, and to that extent I think I am entitled to a compensation of 2-1/2% on each side of the account. * *

"All the reports made by the Great' Mexican National Smelting Co. or the Guggenheim's Sons, which accompanied the vouchers and checks in payment of the ores both at the time and subsequently extracted under this last contract are in my vault, and will be filed in this Court whenever any request is made to that effect.

"The Register of this Court has examined all of these papers. * * *

"I think the estate of John Bowen has at least a first lien, on the repayment of the taxes, because that payment was essential to preserving them, because without them the mines would have been lost. There was a period of five years in which Mr. Torrey had to pay watchmen, and the taxes. The mines laid idle, I suppose the reason why they resumed was because the interests of the smelter made it necessary to try the Cedral ores. The contract with Bowen & Murdock was made through me and me alone. I was the sole living representative of Bowen & Murdock. I am not prepared to say whether after Mr. Torrey has been reimbursed as to taxes whether he ought to go on and get so much as belongs in proportion to the estate; I am inclined to think that he is entitled to be reimbursed all, until he has been paid.

"As the mine money comes in the money will be appropriated until the balance

has been paid me, then I will begin paying over to Mr. Torrey, I am inclined to think that he has first claim as a creditor of the mines; of course, he will then have to distribute to the heirs of John Bowen.

"The debt due by Bowen & Murdock to Charles Torrey, as Executor, at the time of entering into the contract with M. Guggenheim's Sons was eighty-eight thousand, six hundred and twenty dollars and thirteen cents ($88,620.13). Charles Torrey, as Executor, acknowledged to me to have received from M. Guggenheim's Sons, under that contract, in all, five thousand four hundred and fifty-nine dollars and sixty cents ($5,459.60). This sum added to those I admit to have received show the total amount received under that contract towards repayment of the indebtedness of Bowen & Murdock to Charles Torrey, as executor."

The decree of the chancellor was:

"It is further ordered that Frederick G. Bromberg, the Manager of Bowen and Murdock pay to himself out of the funds in his hands as such manager, and charge the same to the trust, the sum of one thousand dollars as compensation for his services as solicitor in this cause, and the further sum of one hundred and ninety dollars and thirty eight cents the amount reported by the Register to have been expended by him on his visits to Mexico in the interest of the mines, and the further sum of two hundred and sixty dollars for compensation for his time expended on his trips to the mines and the further sum of one hundred and sixty-eight & 10/100 dollars as commissions on the funds that have come into his hands.

"It is further ordered that upon the payment of the costs of the proceedings in this cause by Bowen & Murdock, that the cause be taken off of the trial docket.

"In Term time, May 2nd, 1903.
"Thomas H. Smith, Chancellor."

The above pleadings, evidence, and decree were in the case in which Charles Torrey, as Bowen's executor, and the parties here were parties litigant.

An agreement and Bromberg's affidavit in this record are to the effect:

"Whereas, the firm of Bowen & Murdock as owners of the Cedral Mines in the State of Coahuila, Mexico, are indebted to the firm of Balbach & Son in a sum of about $9000, and to the estate of John Bowen, deceased, in a sum of about $60,000, and whereas Charles Torrey, as Executor of said estate has heretofore furnished the larger part of the means to work said mines, we agree that said Charles Torrey of Boston, Massachusetts, shall be allowed to manage and direct the operations of said mines according to his best judgment until all of said debts and advances are paid, and to fix the compensation and pay of all employees in said mines, and to pay all employees in said mines until the cancellation of all of said indebtedness with interest; and said executor agrees to manage said mines so as to produce the result of paying off said indebtedness in the shortest time practicable; provided, however, that under no circumstances can Mrs. Augusta Cox, the wife of G. W. Cox, or her children, be held responsible with her property for debts contracted for or by the management of the said mines.

"Witness our hands at Mobile, this 18th day of December, A. D., 1890, in triplicate.
"T. J. Locke    A. A. Winston,
                "Augusta Cox,
                "G. W. Cox, Executor of
                    A. Murdock, deceased.

"Attached envelope to above evidence marked 3/16/37—Identified as McMillan Ex. 11 CLR on which there is written: 'Dec. 15, 1928—Telegram—C. Torrey's personal a/c Died Apl 9 1901—Charles Torrey's death April 9, 1905—Copies of agreement of Winston et als that C. Torrey manage B & M—Evidence of indebtedness to Estate John Bowen by Heirs Murdock'.

"Law Officers of Frederick G. Bromberg, Mobile, Alabama. State of Alabama, County of Mobile.

"Before me, G. A. Walsh, Notary Public in and for said State and County, personally appeared Frederick G. Bromberg, whose name is signed in the endorsement on the check of the Treasurer of the United States number 363,210 as sole surviving representative of Bowen and Murdock, being such representative by reason of the Partnership Agreement between John Bowen and Abraham Murdock, formed for the purpose of purchasing the right to mine the Cedral Silver Mines in the State of Coahuila, Republic of Mexico; by the terms of which in case of the death of Abraham Murdock, he was to be represented by his son-in-law G. W. Cox,

and in case of the death of John Bowen, John Bowen was to be represented by this deponent. Within a few months after this agreement between Bowen and Murdock was entered into, Abraham Murdock, G. W. Cox and John Bowen, respectively died, leaving this deponent as the sole surviving representative of Bowen and Murdock.

"Frederick G. Bromberg.

"Sworn to and subscribed before me this 27th day of June, A. D., 1929.

"G. A. Walsh, Notary Public, Mobile County, Ala. (Seal) My commission expires July 13, 1929."

■ Under this and the other evidence, the Bowen heirs have title to the moneys now subject of this litigation, it being shown that the Bowen estate was not paid for advancements made to keep the right of mining alive under Mexican law. The decree properly held.

The appellant invokes the propositions of statute of limitations, laches, and the statute of nonclaim as defeating the claims of the Bowens and other heirs, parties to the original agreement of Bowen & Murdock.

In Haney v. Legg et al., 129 Ala. 619, 30 So. 34, 87 Am.St.Rep. 81, a trust was enforced after the lapse of more than thirty-five years; and in Snodgrass v. Snodgrass, 185 Ala. 155, 164, 64 So. 594, the principle was affirmed that lapse of time is of no avail on right or remedy, where there was a due recognition of the existence of the trust and that each recognition of the trust afforded a new beginning of the running of time, and each case stands upon the facts and circumstances therein. Whetstone v. Whetstone's Ex'rs, 75 Ala. 495; Snodgrass v. Snodgrass, 176 Ala. 282, 58 So. 199.

■ The rule in such matters as to laches is stated in Rives v. Morris et al., 108 Ala. 527, 18 So. 743, as follows:

"Where, from delay, any conclusion the court may arrive at must at best be conjectural, and the original transactions have become so obscured by lapse of time, loss of evidence, and death of parties as to render it difficult if not impossible to do justice, the complainant will by his laches be precluded from relief; and it is not even necessary that the court should be satisfied that the original claim was unjust, or has been satisfied. And this is true even though the demand is not barred by the statute of limitations, nor under the ban of the doctrine of prescription."

■ This rule has been uniformly followed in this jurisdiction. Fanning v. Fanning, 210 Ala. 575, 98 So. 804; South et al. v. Pinion et al., 207 Ala. 122, 92 So. 420; Veitch v. Woodward Iron Co., 200 Ala. 358, 76 So. 124; Patterson v. Weaver et al., 216 Ala. 686, 114 So. 301. Each case is governed by its facts. There are no laches that prevent recovery. The trustee intentionally kept the trust alive and active as affecting the instant moneys.

The many cases cited to the insistence of nonclaim do not apply. Rhodes v. Hannah's Adm'r, 66 Ala. 215; Taylor, Adm'r, v. Robinson, Adm'x, 69 Ala. 269. The fund sought was not as a debt which was to be enforced against Bromberg's estate. The case of Fretwell et al. v. McLemore et al., 52 Ala. 124, states the rule.

There was no devastavit sought to be enforced against Bromberg's estate. Mr. Bromberg is to be commended as to the manner in which he preserved intact the trust funds. Page et al. v. Bartlett et al., 101 Ala. 193, 13 So. 768. Nor was a question of suretyship presented. Glass v. Woolf's Adm'r, 82 Ala. 281, 3 So. 11.

In Collins v. Morgan County Nat. Bank, 226 Ala. 376, 147 So. 161, the authorities are collected to the effect that a special deposit for a specific purpose, other than safekeeping and return to depositor, creates a trust. However, this case is not applicable to the instant facts. The trust was asserted and maintained in effect by Bromberg's acts, and the money so deposited with appellee was under the agreement set out and distributed according to its terms. This was required to be done by the instant decree.

■ An executor in his will may so charge his estate as not to fall within the nonclaim statutes, Code 1923, § 5815, as amended by Gen.Acts 1931, p. 840. The same is true as to a trust contract. On the subject of nonclaims, the recent case of Foster v. Featherston, 230 Ala. 268, 272, 160 So. 689, states the general rule and the exceptions thereto that the claims are to a specific trust and do not seek a personal decree against the Bromberg estate or personal representative, and are not subject to the statute of nonclaim. Cook v. Castleberry, 233 Ala. 650, 173 So. 1.

232.

It follows from these and other authorities that may be collected that a trust was created and preserved; that the Bowen trust claim was created and preserved by the conscientious and painstaking acts, statements, pleading, and testimony of Mr. Bromberg in other cases; by the correspondence and bank accounts and individual accounts and reports made and kept by Bromberg. This claim is not now affected or to be defeated by the rule of repose, laches, limitation, or nonclaim.

The effect of Bromberg's evidence in the former case (No. 5079) was, as we have noted, that the Bowen estate advanced large sums to keep the mine running and beyond forfeit under Mexican law; which was done in the incurring of the indebtedness to the Bowen estate, in a sum of about eighty to one hundred thousand dollars, which has not been paid to the Bowens.

The former bill was filed by Bromberg as solicitor for all interests and invoked the jurisdiction of the court and established the trust. The evidence adverted to shows that Bromberg held the sums deposited subject to the claims of the heirs of John Bowen, deceased, to the extent of $80,000 and that he asserted no hostile claim and showed the advancement had not been paid. We may further remark that there is no rule as to commingling of funds here. If it did apply, the duty to trace and separate each fund was upon the appellant. First National Bank of Decatur v. Henry, 159 Ala. 367, 49 So. 97.

We may add that a perusal of the testimony given in the former suit by F. G. Bromberg et al. v. John B. Wilson et al. in the chancery court of Mobile, and the evidence given by Frederick G. Bromberg, Augustus A. Winston, and William B. Pope, and the several partnership agreements and other documents exhibited, supported the decree rendered. It will not be necessary to further examine the evidence in this voluminous record. It is sufficient to say, it has been given due consideration.

It follows that the decree of the circuit court should be and it is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.

On Rehearing.

THOMAS, Justice.

A party not entitled to recover in any event cannot complain of error if committed on the trial. Guest et al. v. Guest et al., 234 Ala. 581, 176 So. 289; Britt v. Daniel, 230 Ala. 79, 159 So. 684; McGifford v. Protective Life Ins. Co., 227 Ala. 588, 151 So. 349. That is to say, if error only affected a party not entitled to succeed, such party cannot complain in this court to a reversal on behalf of the other whom he did not stand for in a representative capacity. Stephens v. Walker, 217 Ala. 466, 117 So. 22; Britt v. Daniel, supra; Kelly v. Hanwick, 228 Ala. 336, 153 So. 269.

The record shows that appellants were not entitled to these moneys in any event, whether Bromberg held them as bailor or as trustee. It is sufficient to say that the whole of the voluminous record has been re-examined and we have no doubt as to the result announced.

It may be well to say that, when the effort on the part of Mr. Bromberg as to the tax returns is considered, his statements and affidavits in the application were for the return to the account of Bowen and Murdock. This conclusively shows that he considered that he was acting as, and held the moneys only as, trustee. The pertinent correspondence is exhibited at page 438 et seq. of the record. The language of this effort on the part of Mr. Bromberg can have no other meaning but that he was acting as trustee and not in his individual capacity. The refund amounting to about $1,300 allowed by the government was received and deposited by Mr. Bromberg to the account of Bowen and Murdock.

After a review of the whole matter, we are of the opinion that the application for rehearing should be overruled, since the trial was had as if the pleadings were amended. Such is our understanding of the record and the theory on which the trial proceeded. Federal Automobile Insurance Ass'n v. Meyers, 218 Ala. 520, 119 So. 230.

Application for rehearing overruled.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.